UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORI JO VINCENT, ET AL.,

                Plaintiffs,

     - against -

THE MONEY STORE, ET AL.,

             Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# ____
DATE FILED: _____

11 Civ. 7685 (JGK)

AMENDED OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

     The plaintiffs, Lori Jo Vincent, Ruth Ann Gutierrez, Linda
U. Garrido and John Garrido bring this purported class action
(hereinafter "Vincent II") on behalf of themselves and all
others similarly situated against The Money Store, TMS Mortgage,
Inc., HomEq Servicing Corp. (collectively "The Money Store
defendants"), Wells Fargo Bank, N.A. ("Wells Fargo"), Barclays
Capital Real Estate, Inc. ("Barclays"), Ocwen Loan Servicing,
LLC ("Ocwen"), and Moss, Codilis, Stawiarski, Morris, Schneider
& Prior, LLP ("Moss Codilis").

     The plaintiffs bring state law claims against all
defendants for fraud, unjust enrichment, and unfair business
practices in violation of California Business & Professions Code
§ 17200, et seq.  The plaintiffs assert a breach of contract
claim against The Money Store defendants.  Finally, the
plaintiffs assert a claim against Moss Codilis for the
unauthorized practice of law in violation of § 12-5-115 of the

Colorado Revised Statutes.   Jurisdiction is asserted under the
Class Action Fairness Act ("CAFA").   28 U.S.C. § 1332(d).

     The facts alleged in this recently-filed case are
substantially the same as those asserted in a previous case in
which this Court dismissed the federal claims and declined to
exercise supplemental jurisdiction over state law claims.   See
Vincent v. Money Store ("Vincent I"), No. 03 Civ. 2876, 2011 WL
4501325 (S.D.N.Y. Sept. 29, 2011).   Rather than pursuing their
state law claims in state court, the plaintiffs brought their
new action in federal court based on CAFA.   All defendants now
move pursuant to Rule 56 of the Federal Rules of Civil Procedure
for summary judgment dismissing the plaintiffs' claims as barred
by the statutes of limitations.[1]   The plaintiffs respond that the
claims are not time-barred based on various federal and state
tolling doctrines that allegedly tolled the relevant statutes of
limitations during the pendency of Vincent I.

I.

     The standard for granting summary judgment is well
established.   "The [C]ourt shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."

---

[1] Wells Fargo moves for summary judgment on behalf of itself and
The Money Store defendants because it is the acknowledged
"Ultimate Successor by Merger" to The Money Store defendants.

2

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty,
in short, is confined at this point to issue-finding; it does
not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the
district court of the basis for its motion" and identifying the
matter that "it believes demonstrate[s] the absence of a genuine
issue of material fact." Celotex, 477 U.S. at 323.  The
substantive law governing the case will identify those facts
that are material and "[o]nly disputes over facts that might
affect the outcome of the suit under the governing law will
properly preclude the entry of summary judgment." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also
Behringer v. Lavelle Sch. for the Blind, No. 08 Civ. 4899, 2010
WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655

3

(1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.

## II.

The facts alleged in the Amended Complaint in this case are substantially the same as those set out in this Court's opinion in Vincent I.  They will only be repeated here as necessary for the present motions.

### A.

The plaintiffs are individuals who took out home mortgage loans.  See Vincent I, 2011 WL 4501325, at *2.  Plaintiffs Linda U. Garrido and John Garrido are residents of New York.  (Am. Compl. ¶ 7.)  Plaintiff Ruth Ann Gutierrez is a resident of California.  (Am. Compl. ¶ 6.)  Plaintiff Lori Jo Vincent

resides in Florida, but was a resident of Texas at the relevant time.  (Am. Compl. ¶ 5; Declaration of W. Hans Kobelt, sworn to Apr. 4, 2012 ("Kobelt Decl.") ¶ 10.)  The Money Store defendants serviced each of the loans.  (Am. Compl. ¶¶ 20, 36, 45.)

The Money Store hired Moss Codilis to prepare and send default notices, or breach letters, to the plaintiffs after they had defaulted on their mortgage payments.  (Moss Codilis R. 56.1 Stmt. at ¶ 1.)  Each of the plaintiffs received such notices from Moss Codilis between 1997 and 2000.  (Moss Codilis R. 56.1 Stmt. at ¶ 5; Am. Compl. ¶¶ 20, 36, 45.)

The plaintiffs contend that the breach letters contained false and misleading statements.  They also contend that they were charged legal fees for the services of Moss Codilis when in fact the services performed by Moss Codilis were performed by persons who were not authorized to practice law in Colorado, where the services were performed.  (See, e.g., Am. Compl. ¶¶ 55, 59, 75.)  The plaintiffs also allege that The Money Store defendants charged fees that they had no right to collect. (See, e.g., Am. Compl. ¶ 72.)

Each of the plaintiffs loans were paid off in full. Vincent's loan was paid off by October 23, 2002.  (Release of Lien, Kobelt Decl. Ex. K.)  The Garridos' loan was paid in full by July 25, 2003.  (Satisfaction of Mortgage, Kobelt Decl. Ex.

M.) Gutierrez's loan was satisfied by June 4, 2004.  (Full
Reconveyance, Kobelt Decl. Ex. L.)

**B.**

The defendants in this case are the mortgage loan
servicers, their alleged successors-in-interest, and Moss
Codilis.  Moss Codilis and The Money Store defendants were
defendants in the Vincent I action.  (See Am. Compl., Vincent v.
Money Store, No. 03 Civ. 2876 (S.D.N.Y. Oct. 19, 2010), ECF No.
126.)  Several of the defendants in Vincent II are alleged
successors-in-interest to The Money Store defendants in
Vincent I.  Wells Fargo, Barclays, and Ocwen were not named
defendants in Vincent I.  (Barclays' R. 56.1 Stmt. at ¶ 2; Pl.'s
Resp. to Barclays' R. 56.1 Stmt. at ¶ 2; see Am. Compl., Vincent
v. Money Store, No. 03 Civ. 2876 (S.D.N.Y. Oct. 19, 2010), ECF
No. 126.)  Wells Fargo admits that it is the successor-in-
interest to The Money Store. (Wells Fargo R. 56.1 Stmt. at ¶ 9.)
The plaintiffs allege, and Ocwen denies, that Ocwen is a
successor-in-interest to The Money Store defendants and/or did
business under the name HomEq.  (Am. Compl. ¶ 12; Ocwen's Answer
¶ 12.)

The plaintiffs allege, and Barclays denies, that Barclays
is a successor-in-interest to The Money Store defendants. (Am.
Compl. ¶ 14; Barclays' Answer ¶ 14.)  Barclays executed an asset

6

purchase agreement in 2006 with Wachovia, HomEq, and certain of Wachovia's other subsidiaries. (Barclays' Answer ¶ 14.) Barclays alleges that, pursuant to the asset purchase agreement, it acquired the assets of HomEq Servicing Corporation, but not the liabilities. (Barclays' Answer ¶ 14.) Barclays admits that it did business under the name HomEq (as Barclays Capital Real Estate, Inc. d/b/a HomEq Servicing) from November 1, 2006 until Barclays Bank PLC sold the mortgage servicing assets in August 2010. (Barclays' Answer ¶ 14.) Barclays alleges that all of the named plaintiffs' mortgages were fully satisfied before the closing date of the asset purchase agreement and that it never serviced the mortgages of any of the named plaintiffs. (Barclays' Answer ¶¶ 25, 32, 34, 41, 50.)

### C.

On April 24, 2003, the plaintiffs brought their initial action, Vincent I, against The Money Store defendants and Moss Codilis alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (See Compl., Vincent v. Money Store, No. 03 Civ. 2876 (S.D.N.Y. Apr. 24, 2003), ECF No. 1.) The plaintiffs also alleged common law claims for breach of contract, fraud, unjust enrichment, and unfair business practices in violation of California Business

and Professions Code § 17200, et seq. (Wells Fargo's R. 56.1
Stmt. ¶ 1.)   The plaintiffs alleged, among other things, that
they were charged improper legal fees and expenses by the
defendants in connection with the mortgage loans they had taken
out on their homes and that they were the victims of improper
debt collection practices.   The claims in Vincent I were timely
filed.

On December 7, 2005, Judge Sprizzo granted partial summary
judgment dismissing the plaintiffs' claims against The Money
Store defendants under the FDCPA.   See Vincent v. Money Store,
402 F. Supp. 2d 501 (S.D.N.Y. 2005).   On September 29, 2011,
this Court granted summary judgment dismissing the plaintiffs'
claim under TILA, concluding that The Money Store defendants did
not qualify as "creditors" under TILA and therefore could not be
held liable under the statute.   Vincent I, 2011 WL 4501325, at
*5.   The Court then declined to exercise supplemental
jurisdiction over the plaintiffs' state law claims against The
Money Store defendants and Moss Codilis on the basis that the
only federal claim remaining in the action, the TILA claim, had
been dismissed, and it was therefore appropriate to decline to
exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).
Id. at *5-7.   On November 29, 2011, the Court denied the
plaintiffs' motion for reconsideration and reaffirmed its
decision to decline to exercise supplemental jurisdiction.   See

8

Vincent v. Money Store, No. 03 Civ. 2876, 2011 WL 5977812, at
*4-5 (S.D.N.Y. Nov. 29, 2011).

On October 27, 2011, the plaintiffs filed a notice of
appeal in Vincent I solely on the issue of the dismissal of the
TILA claim. (See Notice of Appeal, Vincent v. Money Store, No.
03 Civ. 2876 (S.D.N.Y. Oct. 27, 2011), ECF No. 161.) The
plaintiffs did not appeal the denial of supplemental
jurisdiction over the state law claims. (See Pls.'-Appellants'
Br., Vincent v. Money Store, No. 11 Civ. 4525 (2d Cir. Mar. 14,
2012), ECF No. 64, at 6.) Vincent I is now pending in the
Second Circuit Court of Appeals.

On October 28, 2011, the plaintiffs commenced this action,
alleging jurisdiction under CAFA, 28 U.S.C. § 1332(d), against
The Money Store defendants and Moss Codilis. (See Compl.) CAFA
expanded the availability of diversity jurisdiction to class
action lawsuits alleging at least $5 million of damages so long
as there is minimal diversity among the parties. See 28 U.S.C.
§ 1332(d); see also Holster v. Gatco, Inc., 618 F.3d 214, 215
(2d Cir. 2010); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d
Cir. 2006). On December 28, 2011, the plaintiffs filed an
amended complaint in which the plaintiffs added Barclays, Wells
Fargo, and Ocwen as defendants. (See Am. Compl.) The state law
causes of action against Wells Fargo, Ocwen, and Barclays are
identical to the causes of action brought against The Money

Store defendants in <u>Vincent I</u>.  (<u>See</u> Am. Compl.; Wells Fargo's R. 56.1 Stmt. at ¶ 10; Pl.'s Resp. to Wells Fargo's R. 56.1 Stmt. at ¶ 10.)

III.

A.

Wells Fargo and Moss Codilis argue that the statutes of limitations have run on the state law claims asserted by the plaintiffs.  When this action was filed on October 28, 2011, more than seven years had elapsed since the last loan by any of the plaintiffs had been fully paid.  All parties agree that the initial limitations periods on all claims have run, and therefore the only issue is whether the statutes of limitations for the claims have been tolled by some available mechanism. The plaintiffs raise numerous arguments that the relevant statutes of limitations have been tolled.  Each will be addressed in turn.

1.

The plaintiffs first argue that the statutes of limitations for all claims were tolled under 28 U.S.C. § 1367(d).  The defendants argue that § 1367(d) is inapplicable because the plaintiffs refiled their action in federal, not state court.

10

The defendants are correct that § 1367(d) is not available to
the plaintiffs.

When a state law claim first asserted under supplemental
jurisdiction is subsequently dismissed by the court, section
1367(d) provides that, "[t]he period of limitations for any
claim asserted under subsection (a) . . . shall be tolled . . .
for a period of 30 days after it is dismissed . . . ."  28
U.S.C. § 1367(d).  The Second Circuit Court of Appeals has
explained that "[s]ection 1367(d) ensures that the plaintiff
whose supplemental state claim is dismissed has at least thirty
days after dismissal to refile in state court."  Seabrook v.
Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) (emphasis added).
Judges in this District and other jurisdictions have interpreted
§ 1367(d) to apply only to cases refiled in state court.  See,
e.g., Malone v. Bayerische Hypo-Und Vereins Bank, Nos. 08 Civ.
7277, 09 Civ. 3676, 2010 WL 391826, at *7 (S.D.N.Y. Feb. 4,
2010) (collecting cases).  These precedents and their reasoning
are persuasive.[2]  This Court dismissed the state law claims in

---

[2] Moss Codilis' argument that § 1367(d) is the sole tolling
provision that can apply to claims dismissed pursuant to
§ 1367(c) is not supported by either the statute or precedent.
Malone, on which Moss Codilis relies, actually analyzed whether
New York's saving statute, N.Y. C.P.L.R. § 205(a), applied,
undercutting the argument that Malone stands for the proposition
that only § 1367(d) may be applied.  Furthermore, the plain
language of § 1367(d) indicates that a claim shall be tolled
"for a period of 30 days . . . unless State law provides for a
longer tolling period."  The reference to state law as an

Vincent I when it declined to exercise supplemental jurisdiction over them. Under § 1367(d), the plaintiffs had 30 days to refile the claims in state court. Section 1367(d) is not a mechanism to frustrate the dismissal of claims in federal court by simply refiling them. It provides an opportunity to pursue those claims in state court. "The Court finds no evidence that § 1367 was intended to act as a savings statute, allowing a plaintiff to refile in federal court." Parrish v. HBO & Co., 85 F. Supp. 2d 792, 795-96 (S.D. Ohio 1999). The statutes of limitations were not tolled under § 1367(d).

## 2.

The plaintiffs next argue that under American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), the statute of limitations was tolled during the pendency of Vincent I. The defendants counter that American Pipe is only applicable to absent class members, or, in the alternative, that it is unavailable in diversity actions. American Pipe did not toll the plaintiffs' claims.

American Pipe is a tolling rule that tolls the time for absent class members to bring a claim while a class action is pending of which they are members. The American Pipe case

---

alternative clearly indicates that § 1367(d) was not meant to preempt state tolling provisions.

concerned the tolling of claims under a federal statute, the
Sherman Act.  It did not purport to announce a rule that would
apple to state law claims.  In American Pipe, the Supreme Court
announced a rule intended "to preserve the individual right to
sue of the members of a proposed class until the issue of class
certification has been decided."  Casey v. Merck & Co., 653 F.3d
95, 99 (2d Cir. 2011) (quoting In re "Agent Orange" Prod. Liab.
Litig., 818 F.2d 210, 214 (2d Cir. 1987)).  In Casey, the Second
Circuit Court of Appeals explained that, in diversity cases,
rather than apply the American Pipe rule, "a federal court
evaluating the timeliness of state law claims must look to the
law of the relevant state to determine whether, and to what
extent, the statute of limitations should be tolled by the
filing of a putative class action in another jurisdiction."  653
F.3d at 100.  In this action, the plaintiffs have asserted
exclusively state law claims against all defendants.³  Therefore,
in evaluating the timeliness of the claims, all based on state
law, the Court must look to the state statutes of limitations
including the state tolling rules.  The plaintiffs cannot rely

³ It makes no difference that the state law claims in Vincent I
were before the Court based on supplemental jurisdiction and the
state law claims are now before this Court in Vincent II based
on diversity of citizenship as a result of CAFA.  The law to be
applied to the claims in Vincent II for purposes of statutes of
limitations is state law rather than federal law.  When a
federal court applies a state statute of limitations it should
also apply state law tolling provisions.  See Walker v. Armco
Steel Corp., 446 U.S. 740, 750-53 (1980).

on American Pipe to toll the statutes of limitations for their state law claims.  The plaintiffs must look to any state analogue to American Pipe tolling rather than American Pipe itself.

Moreover, American Pipe tolling would not help the named plaintiffs.  The policy behind American Pipe counsels against allowing named plaintiffs in a prior class action, as opposed to absent class members, to have their claims tolled.  "American Pipe tolling permits an absent class member to rely on a pending class action to toll the statute of limitations as to her individual claim, obviating the need for her to file a separate action to guard against the possibility that class certification will eventually be denied."  LaSala v. Needham & Co., No. 04 Civ. 9237, 2006 WL 1206241, at *2 (S.D.N.Y. May 2, 2006); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983).  "The reason is that absent putative class members are expected and encouraged to remain passive during the early stages of the class action and to 'rely on the named plaintiffs to press their claims.'"  Cullen v. Margiotta, 811 F.2d 698, 719 (2d Cir. 1987) (quoting Crown, Cork, 462 U.S. at 352-53); see also American Pipe, 414 U.S. at 552; Choquette v. City of New York, 839 F. Supp. 2d 692, 697-701 (S.D.N.Y. 2012).  In describing American Pipe, the Supreme Court recently described it as a case that provided benefits to non-parties.  See Smith

v. Bayer Co., 131 S. Ct. 2368, 2380 n.10 (2011) ("[American Pipe] demonstrate[s] only that a person not a party to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding.") (emphasis added). The policy underlying American Pipe makes clear that it is inapplicable to named plaintiffs.

The cases on which the plaintiffs rely are inapposite. See, e.g., In re Worldcom Sec. Litig., 496 F.3d 245 (2d Cir. 2007); Cullen, 811 F.2d at 719. Worldcom involved absent class members, not named plaintiffs, who had also filed individual actions after the class action was filed. 496 F.3d at 246-51. In Cullen, the Second Circuit Court of Appeals did not rely on American Pipe tolling for the named plaintiffs, stating, "the named plaintiffs in the state action, Cullen and Jund, assert here claims that accrued in 1974 and are therefore timely without regard to American Pipe tolling." 811 F.2d at 721. Therefore, American Pipe does not save the claims of these plaintiffs—who were named plaintiffs in Vincent I—from being time-barred.

3.

The next issue is whether the statutes of limitations for the state law claims were tolled pursuant to New York's saving statute, N.Y. C.P.L.R. § 205(a), and New York's borrowing

15

statute, N.Y. C.P.L.R. § 202.  The plaintiffs argue that even if their state law claims are not tolled under § 1367(d) or American Pipe, the claims are tolled under section 205(a). Section 205(a) applies to the plaintiffs' claims.  However, whether the claims for each plaintiff are tolled depends on the residence of each of the named plaintiffs under New York's borrowing statute, N.Y. C.P.L.R. § 202.

A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations.  See Diffley v. Allied Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990).  In diversity cases in New York, federal courts apply New York's borrowing statute, N.Y. C.P.L.R. § 202, see Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998), as well as New York's saving statute, N.Y. C.P.L.R. § 205(a), see Diffley, 921 F.2d at 423.  The burden of proving that a particular statute of limitation has expired falls on the defendants.  Romano v. Romano, 227 N.E.2d 389, 391 (N.Y. 1967). However, the plaintiffs bear the burden of proving that a particular statute of limitation has been tolled.  Doyon v. Bascom, 326 N.Y.S.2d 896, 898 (App. Div. 1971).  Both the New York borrowing statute and saving statute apply in this case.

The New York borrowing statute applies differently to residents and nonresidents.  As to residents, the borrowing

statute provides that, "where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." N.Y. C.P.L.R. § 202. Section 202 requires that an out-of-state claim that accrues in favor of a New York resident is governed by the tolling laws of New York, regardless of whether the other state's statute of limitations is shorter. Braniff Airways, Inc. v. Curtiss-Wright Corp., 424 F.2d 427, 428-29 (2d Cir. 1970); Bartholomeo v. Parent, 71 F.R.D. 86, 87 (E.D.N.Y. 1976). Therefore, for the New York plaintiffs, whether the New York tolling statute, section 205(a), applies, is the sole inquiry.

As to the nonresident plaintiffs, even if section 205(a) applies, their claims must also be timely in the forum in which their causes of action accrued. The borrowing statute provides, "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued . . . ." N.Y. C.P.L.R. § 202. "[T]he Court must consider not just the accrual state's limitations period, but also that state's tolling provisions." Morson v. Kreindler & Kreindler, LLP, 814 F. Supp. 2d 220, 228-29 (E.D.N.Y. 2011) (citing Portfolio Recovery Assocs., LLC v. King, 927 N.E.2d 1059, 1061 (N.Y. 2010)); see also In re Fosamax Prods. Liab. Litig., 694 F. Supp. 2d 253, 256 (S.D.N.Y. 2010).

17

Therefore, for the nonresident plaintiffs, their claims must be timely under the shorter limitations period of either New York or the state where the action accrued. With respect to tolling, a nonresident is afforded the benefit only of the shorter tolling period of New York or the state where the claim accrued.

The preliminary inquiry for both the resident and nonresident plaintiffs is whether section 205(a) applies to toll the plaintiffs' claims. For any of the plaintiffs' claims to be timely, section 205(a) must toll their claims. Section 205(a) provides:

> If an action is timely commenced and is terminated in any other manner than by [a number of inapplicable exceptions], the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

N.Y. C.P.L.R. § 205(a) (emphasis added). Under the plain wording of section 205(a), this action "would have been timely commenced" at the time of the commencement of Vincent I because all of the claims asserted in Vincent I were timely when Vincent I was filed. The plaintiffs are currently asserting all of the same state law claims they asserted in Vincent I and the defendants do not claim that any of the claims were time-barred in Vincent I. Therefore, because Vincent I was terminated by

the Court's declining to exercise supplemental jurisdiction, this action was commenced within six months after the dismissal of Vincent I, and the claims asserted in this case would have been timely when Vincent I was commenced, the statutes of limitations for the plaintiffs' claims were literally tolled by section 205(a).

The defendants argue that section 205(a) is inapplicable because the second suit could not possibly have been commenced in 2003, because CAFA did not come into effect until 2005. Although CAFA jurisdiction did not exist in 2003, that does not prevent the plaintiffs from using section 205(a) to toll the statutes of limitations for their claims.

The legislative history of the 1978 amendment to section 205(a) demonstrates that the inability of the Court to hear the state law claims in 2003 because of lack of jurisdiction is irrelevant. Prior to the 1978 amendment to section 205(a), a plaintiff was required to sue upon the exact same cause of action to trigger the saving benefits of the statutory provision. The previous section 205(a) provided:

> If an action is timely commenced and is terminated in any other manner than by [a number of inapplicable exceptions], the plaintiff . . . may commence a new action upon the same cause of action within six months after the termination . . . .

1978 N.Y. Laws vol. I, i; see also George v. Mt. Sinai Hosp.,
390 N.E.2d 1156, 1159 (N.Y. 1979). Under the plain meaning of
the statute at that time, the plaintiff could not add different
claims related to the same transaction or occurrence if the
plaintiff sought to reap the benefits of the six month tolling
provision.

In 1978, the New York State Legislature amended section
205(a) by substituting the current language, permitting a second
action "upon the same transaction or occurrence or series of
transactions or occurrences within six months after the
termination provided that the new action would have been timely
commenced at the time of commencement of the prior action."
N.Y. C.P.L.R. § 205(a); see also George, 390 N.E.2d at 1159.
The purpose of the substitution was to reconcile the statutory
language with "a longstanding body of New York case law holding
that § 205(a) and its predecessors are not limited to invocation
in instances in which a plaintiff's second suit is based upon an
identical cause of action." Harris v. U.S. Liab. Ins. Co., 746
F.2d 152, 1554 (2d Cir. 1984) (citing Titus v. Poole, 40 N.E.
228, 230 (N.Y. 1895); N.Y. Civ. Prac. Law § 205(a) supp. prac.
commentaries (McKinney Supp. 1982-1983) (Suit on Same Cause of
Action)). The additional "would have been" clause was added to
make it clear that if the plaintiff sought to add new claims to
the second suit arising from the original transaction or

occurrence, the new claims could only be added if they would have been timely if filed at the date of the filing of the first suit.  See Mem. of Assemb. Melvin H. Miller, reprinted in N.Y. Legis. Ann., 1978, p. 93.[4]  Therefore, the "would have been timely commenced language" is not related to whether the claims could have been brought in the jurisdictional sense, but only whether new claims would have been timely under the statute of limitations.

The meaning of the 1978 amendment corresponds with the policy behind section 205(a).  In George, the New York Court of Appeals explained:

> [T]he function of the CPLR subdivision is to ameliorate the potentially harsh effect of the Statute of Limitations in certain cases in which at least one of the fundamental purposes of the Statute of Limitations has in fact been served and the defendant has been given timely notice of the claim being asserted by or on behalf of the injured party.  The statute is a remedial one, and as Judge Cardozo has explained, "[its] broad and liberal purpose is not to be frittered away by any narrow construction.  The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts."

---

[4] For example, if the plaintiff wanted to add a claim related to the underlying transaction or occurrence in suit #2 that had a one year statute of limitations, and only brought suit #1 two years after the event, that claim would be barred by the "would have been timely commenced" language of section 205(a).  See Mem. of Assemb. Melvin H. Miller, reprinted in N.Y. Legis. Ann., 1978, p. 93.

21

390 N.E.2d at 1160 (quoting Gaines v. City of New York, 109 N.E. 594, 596 (N.Y. 1915)). "The very function of that subdivision is to provide a second opportunity to the claimant who has failed the first time around because of some error pertaining neither to the claimant's willingness to prosecute in a timely fashion nor to the merits of the underlying claim." Id. at 1161.

In this case, the initial claims failed not because of the plaintiffs' unwillingness to prosecute nor to the merits of the underlying claims. The defendants were given timely notice of the claims that were asserted and that are being reasserted in this action. All of the claims were timely when originally filed. All parties were aware of the suit when it was timely commenced, regardless of the basis for jurisdiction. The only difference today is that the plaintiffs have a basis for jurisdiction that was not available to them at the time the claims were first made. The interpretation the defendants urge contrasts with the liberal construction that the New York courts have instructed should be given to section 205(a).

The defendants argue that the use of section 205(a) is an attempt to "relate CAFA back" to a time prior to its existence or to use CAFA retroactively. Similar arguments have been rejected in the past. See, e.g., Diffley, 921 F.2d at 422-23. In Diffley, the plaintiffs filed their first suit in 1987 in

federal court on the basis of diversity jurisdiction. Id. at

422. Subsequently, in 1990, it was revealed that the defendant

was not diverse and the suit was dismissed for lack of subject

matter jurisdiction. See id. at 422-23. The plaintiffs refiled

their action in federal court naming the original defendant's

successor-in-interest, who was diverse, as the defendant. See

id. The plaintiffs relied on section 205(a) to toll the statute

of limitations. See id. The district court granted the

defendant's motion to dismiss and held that section 205(a) could

not be applied because there had been no subject matter

jurisdiction over the plaintiffs' original suit, and that the

action was therefore time-barred. See id. The district court

dismissed the action with prejudice and with costs.

On appeal, the Second Circuit Court of Appeals reversed and

held that the suit was not time-barred. The defendants had

argued, similar to the defendants' argument in this case, that

"[t]o apply § 205(a) in these circumstances . . . would conflict

with federal amendment procedures, Fed. R. Civ. P. 15; 28 U.S.C.

§ 1653, and would wrongly expand the court's diversity

jurisdiction over the first action." Id. at 423. The Court of

Appeals rejected the defendants' argument and explained:

> [A]pplication of § 205(a) to the [plaintiffs']
> action against [the defendant] neither affects
> nor circumvents the dismissal of the prior
> action; it creates no "retroactive" diversity
> jurisdiction in the prior action; it does not

> conflict with federal procedure; and it does not
> expand the district court's jurisdiction.
> Instead, § 205(a) merely extends the period for
> filing a claim, and if New York's courts would
> apply it to this case, then we also are bound to
> apply it. Lack of subject matter jurisdiction
> over the initial action does not preclude
> application of § 205(a) to a new action. From the
> time of the adoption of the original saving
> statute, there was "no intent to exclude from the
> benefit [of § 205(a)] a litigant whose action had
> been dismissed for lack of jurisdiction.

Id. at 423-24 (internal citations omitted). In short, the only

relevant questions are: (1) was the first suit timely commenced,

(2) was the second suit commenced within six months after the

termination of the first suit, (3) did the new claims arise from

the same transaction or occurrence as the claims in the first

suit, and (4) would the the new claims have been timely had they

been asserted at the time of the commencement of the first suit.

In this case, the answers to all of these questions is "yes."

The basis for jurisdiction in the second suit has no connection

to the initial basis for jurisdiction. Section 205(a) is

concerned, in all of its language, only with the statute of

limitations.

The Steinberg case, on which the defendants also rely, is

irrelevant because it addresses a different issue from the

application of section 205(a). Steinberg v. Nationwide Mut.

Ins. Co., 418 F. Supp. 2d 215, 219 (E.D.N.Y. 2006). In

Steinberg, the court considered whether a case that was

dismissed and subsequently refiled with a new complaint was "commenced" on the date the first action was filed, or whether the new action was commenced when the new complaint was filed. Id. By its terms, CAFA only applies to actions "commenced on or after the date of enactment." Id. at 219. The court found that taking into account CAFA's legislative history, Congress did not intend CAFA to have retroactive effect. Id. at 219-22. While this makes sense in the context of CAFA, it has no bearing on the use of the words "timely commenced" in section 205(a). Section 205(a) does not give CAFA retroactive effect, but ameliorates the harsh result that would follow from a technical dismissal of an otherwise timely filed action.

Wells Fargo makes an additional argument as to why section 205(a) does not apply to any of the plaintiffs' claims. Wells Fargo argues that section 205(a) applies only to a new action that is commenced "within six months after the termination" of the first action. Wells Fargo argues that Vincent I has not been terminated because the plaintiffs have appealed the dismissal of the TILA claim and that appeal is still pending. This argument is without merit.

Although the TILA claim is on appeal in the Court of Appeals, the plaintiffs did not appeal the dismissal of their state law claims. (Pls.'-Appellants' Br., Vincent v. Money Store, No. 11 Civ. 4525 (2d Cir. Mar. 14, 2012), ECF No. 64, at

1-2.)  Moss Codilis sent a letter to the plaintiffs explaining
that because the plaintiffs had not appealed the dismissal of
the state law claims, Moss Codilis would not file an appellate
brief.  (See Moss Codilis Letter, Vincent v. Money Store, No. 11
Civ. 4525 (2d Cir. June 5, 2012), ECF No. 83.)  The plaintiffs
did not respond to Moss Codilis or indicate in any way that the
state law claims were being appealed.  "[A]lthough the Federal
'Action' has not been terminated, the non-federal claims, which
were dismissed without prejudice, were terminated for purposes
of CPLR 205(a)."  Cook v. Deloitte & Touche USA, LLP, 824
N.Y.S.2d 753, 753 (Sup. Ct. 2006).

    The state court decision in Cook is directly on point and
forecloses Wells Fargo's argument that the state law claims have
not yet been terminated.  In Cook, as in this case, the federal
claims were dismissed in federal court and the state claims were
dismissed without prejudice because the federal court declined
to exercise supplemental jurisdiction.  See id.  The state court
determined that even though an appeal was taken from the
dismissal of the federal claims, because the plaintiff did not
appeal the dismissal of the state claims, those state law claims
were "terminated" under section 205(a).  See id.  In view of
Cook, it would have been risky for the plaintiffs in this case
to wait until the appeal was decided (assuming they wanted to
refile in federal court), because the plaintiffs would have

likely run out of time under section 205(a) to refile the state
claims that were not appealed.

In contrast to Cook, the cases on which the defendant
relies, Graziano v. Pennell, 371 F.2d 761, 763 (2d Cir. 1967),
and Farnitano v. Gaydos, 198 N.Y.S.2d 795, 796 (Sup. Ct. 1960),
are distinguishable.  Both Farnitano and Graziano were cases in
which the claims asserted in the second suit were still pending
in first suits in other trial courts.  Graziano, 371 F.2d at
763; Farnitano, 198 N.Y.S.2d at 796.  Neither case dealt with
the consequences of the pendency of an appeal from the decision
of a trial court which did not appeal the dismissal of the
refiled claims.

Moreover, the two policy rationales animating the decision
in Graziano are both absent in this case.  In Graziano, the
plaintiffs first filed suit in state court.  371 F.2d at 762.
The defendant demanded a bill of particulars.  When the
plaintiff refused to comply, the state court issued a preclusion
order preventing further litigation until the bill of
particulars was produced.  Id.  Rather than comply, the
plaintiff launched a second suit in state court.  Id.  The
defendant moved to dismiss the second suit pursuant to N.Y.
C.P.L.R. § 3211(a)(4), which gives the court discretion to
dismiss a case if "there is another action pending between the
same parties for the same cause of action in a court of any

state or the United States." The state court exercised its discretion and decided to dismiss the second action, although it was not required to do so. Id. Following the dismissal, the plaintiff filed a notice of appeal however, he did not perfect the appeal and the defendant's motion to dismiss the appeal was granted. Id.

The plaintiff filed a third suit in federal court, and argued that although the statute of limitations had expired, because of the dismissal in the second suit, the third suit was timely under section 205(a). Id. at 763. Judge Friendly rejected the plaintiff's attempted use of section 205(a) because "to decide otherwise would enable a suitor, after expiration of the general statute of limitations, to ask a third judge to overrule the refusal of the second. . . ." Id. at 764. Judge Friendly refused to use section 205(a) to circumvent and overrule the discretion of the state court judge to dismiss the case pursuant to section 3211. Judge Friendly also explained that allowing the third suit could conflict with Erie and its progeny. See id. at 764. Were the parties non-diverse, the plaintiff could not have filed in federal court and any subsequent state court suit would inevitably be dismissed under section 3211 or section 205(a). Therefore, under Erie, a different result because of the diversity of the parties, in which the third suit could proceed, could be problematic. Both

of these serious concerns led Judge Friendly to reject the use
of section 205(a) in Graziano.

In this case, unlike in Graziano, neither overruling the
discretionary dismissal of a state judge nor Erie pose an
obstacle to the application of section 205(a). As to the
overruling of a prior court's discretion, the plaintiffs' suit
in this case has not previously been dismissed under section
3211 in a state court. It was dismissed by this Court in
Vincent I. Therefore allowing tolling under section 205(a) will
not overrule the discretion of a state court judge.
Furthermore, there is no possible Erie issue. Under Cook, had
this case been brought in state court, the state court would
hold the first suit "terminated," toll the statute of
limitations, and declare the second suit timely. 824 N.Y.S.2d
at 753. There is no similar problem of a different outcome
solely because of the diversity of the parties. Graziano, as
precedent and as policy, is distinct from this case. No court
has held that the plaintiff's entire suit must be terminated
prior to the filing of a subsequent action under section 205(a).
In light of Cook, it is clear that the state claims here were
"terminated" when the dismissal was not appealed. Section
205(a) applies to the plaintiffs' claims.

Section 205(a)'s application to the plaintiffs' claims only
resolves the question of the statute of limitations as to the

resident plaintiffs, the Garridos.  Their claims are timely.
The borrowing statute, section 202, provides that "where a cause
of action accrues outside of New York in favor of a New York
resident, the time limited by the laws of New York shall
govern." Bartholomeo, 71 F.R.D. at 87.  As explained above,
under New York law, the statutes of limitations for the
Garridos' claims are tolled under section 205(a).  Therefore,
for the Garridos, who are New York plaintiffs, the statute of
limitations for the common law claims of unjust enrichment,
breach of contract, fraud, and the claim under Colorado law was
tolled.[5]

### 4.

Although section 205(a) is controlling for the New York
resident plaintiffs, for the nonresident plaintiffs, Gutierrez
(California) and Vincent (Texas), the statutes of limitations
for their claims must be tolled in both New York and their home
states for their actions to proceed.  Under California and Texas
law, the plaintiffs' claims would not be tolled.  Therefore,
despite the tolling provision of section 205(a), the claims of
the nonresident plaintiffs are barred.

---

[5] The plaintiffs made it clear at the argument of the current
motions that the claim for unfair business practices in
violation of California Business and Professions Code § 17200 et
seq. was asserted only on behalf of the California plaintiff.

Section 202 "requires application of the shorter . . .

applicable tolling provisions, provided by either New York or

the state where the cause of action accrued." Cantor Fitzgerald

Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002) (internal

citation and footnote omitted). Under section 202, New York

courts are required to borrow the statute of limitations of a

foreign jurisdiction where a nonresident's cause of action

accrued if that limitations period is shorter than New York's.

See Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482 (N.Y.

1999) (emphasis added). "[T]he Court must consider not just the

accrual state's limitations period, but also that state's

tolling provisions." Morson, 814 F. Supp. 2d at 228-29 (citing

Portfolio Recovery Assocs., 927 N.E.2d at 1061).

For the purposes of section 202, a cause of action

"accrued" at the time when, and the place where, the plaintiff

is injured. See Global Fin., 715 N.E.2d at 484. Absent unusual

circumstances, when the injury of a nonresident plaintiff is

purely economic, the cause of action accrues where the plaintiff

resides and sustains the economic impact of the loss, id. at

485, rather than where the defendant committed the wrongful

acts, see Gordon & Co. v. Ross, 63 F. Supp. 2d 405, 408

(S.D.N.Y. 1999) (citation omitted); Lang v. Paine, Webber,

Jackson & Curtis, Inc., 582 F. Supp. 1421, 1425 (S.D.N.Y. 1984)

("cause of action for fraud arises where the loss is suffered .

. . where its economic impact is felt, normally the plaintiff's residence."). When another state's statute of limitation and tolling law is considered under section 202, the party seeking to benefit therefrom bears the burden of proof. Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243 (2d Cir. 1984); Cuccolo v. Lipsky, Goodkin & Co., 826 F. Supp. 763, 767 n.3 (S.D.N.Y. 1993).

In this case, although the allegedly unauthorized practice of law was performed in Colorado, and the breaches of contract, fraud, unjust enrichment, and violations of California Business and Professions Code § 17200, et seq., occurred across the country, the plaintiffs suffered the economic impact at their respective residences. Global Fin., 715 N.E.2d at 484. Because all parties agree that the statutes of limitations on the claims have passed, the only issue is whether the tolling laws of the plaintiffs' residences, California and Texas, tolled the claims.

The plaintiffs have argued that Colorado's tolling laws are applicable, at least for the Colorado statutory claim. The only case the plaintiffs cite in support of their argument, LNC Inv., Inc. v. First Fidelity Bank, Nat. Ass'n, 935 F. Supp. 1333, 1350 (S.D.N.Y. 1996), deals with a choice of law question distinct from the issue in this case. In LNV, the issue was whether New York's substantive malpractice law would govern a malpractice claim that alleged malpractice in New York and New Jersey. Id.

Unlike LNV, in this case it is uncontroverted that the claim is brought under Colorado substantive statutory law.   LNV did not consider whether the application of a foreign state's substantive statutory law required the application of that state's statute of limitations and tolling laws as well.   The plaintiffs have cited no cases in support of their position that the application of a Colorado statutory claim requires the application of Colorado's statute of limitations and tolling laws.   Because the plaintiffs are seeking to benefit from the Colorado tolling law, they bear the burden of proof.   Katz, 737 F.2d at 243.   The plaintiffs have not met their burden.   The laws of their respective residences apply to the Colorado claim.

New York's borrowing statute requires the application of Texas and California tolling laws to the plaintiffs' Colorado statutory claim as well as to the remaining claims.   Under New York law, "statutes of limitations are considered procedural," Portfolio Recovery Assocs., 927 N.E.2d at 1061 (citation and internal quotation marks omitted), and "it has generally been held that the [s]tatute of [l]imitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action," Martin v. Julius Dierck Equip. Co., 374 N.E.2d 97, 99 (N.Y. 1978) (citation omitted).   See also Gerena v. Korb, 617 F.3d 197, 206 (2d Cir. 2010) ("New York still adheres to the traditional

substantive/procedural dichotomy in its choice of law analysis
and generally classifies statutes of limitations as procedural,
except for those limitations periods which it designates as
statutes of repose.").[6]  The borrowing statute is the guiding New
York law for statute of limitations choice of law issues, and it
requires that the statute of limitations and tolling provision
to be applied is the shorter of either the relevant provisions
in New York or, for purely economic injuries, the state where
the plaintiff resides and sustains the economic impact of the
loss.  See Global Fin., 715 N.E.2d at 485.  Therefore, even
though the plaintiffs bring a Colorado statutory claim, the
tolling laws of the plaintiffs' residences apply under the New
York borrowing statute to all of the nonresident plaintiffs'
claims including their Colorado statutory claims.

i.

The plaintiffs argue that under California law, the
pendency of Vincent I, in federal court in New York, would have
tolled the statutes of limitations for Gutierrez's claims either

---

[6] The plaintiffs have made no argument that the Colorado statute
of limitations is a substantive statute of repose and because
the burden of proof for such an argument is on the plaintiffs,
the Court will not consider the issue.

because of cross-jurisdictional California American Pipe[7] tolling

or equitable tolling. Both arguments are without merit.[8]

The plaintiffs argue that California law authorizes

California American Pipe tolling for class members while a class

action is pending. See, e.g., Becker v. McMillin Constr. Co.,

277 Cal. Rptr. 491 (Ct. App. 1991). However, the plaintiffs'

argument for California American Pipe tolling has the same fatal

flaw as their argument for federal American Pipe tolling, namely

that Gutierrez is not an absent class member. See Becker, 277

Cal. Rptr. at 492-93 (holding plaintiff's claims tolled because

of an earlier class action in which he was not a named

plaintiff). The plaintiffs point to no cases in which a named

plaintiff in an earlier suit was able to take advantage of

California American Pipe tolling.

Furthermore, California has not adopted cross-

jurisdictional American Pipe tolling and there is no basis to do

---

[7] "California American Pipe tolling" is meant to distinguish the
state law analogue of American Pipe from the federal rule in
American Pipe discussed above. For state law claims, state and
federal courts apply state tolling provisions, including any
state analogues of American Pipe. See Casey, 653 F.3d at 100
("[A] federal court evaluating the timeliness of state law
claims must look to the law of the relevant state to determine
whether, and to what extent, the statute of limitations should
be tolled by the filing of a putative class action in another
jurisdiction.") However, states vary on the extent and limits
of their unique American Pipe tolling provisions.
[8] The California saving statute only applies when a judgment has
been reversed on appeal for reasons other than the merits. Cal.
Civ. Proc. Code § 355 (2011). It is inapplicable in this case.

so in this case.[9]  "[F]ederal courts generally have been
disinclined to import cross-jurisdictional tolling into the law
of a state that has not ruled on the issue."  In re Fosamax, 694
F. Supp. 2d at 258 (collecting cases).  "[C]ross-jurisdictional
tolling . . . includes all situations where a class action is
filed outside the California state court system . . . ."
Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide
Fin. Corp., No. 10 Civ. 05699, 2011 WL 7939090, at *5-6 (C.D.
Cal. Jan. 20, 2011).  This includes cases where both the initial
class action and subsequent suit were filed in federal court in
California.  See id.

In Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025
(9th Cir. 2008), the Court of Appeals for the Ninth Circuit
declined to apply California American Pipe tolling to toll the
statute of limitations in a California action in federal court
based on a prior class action filed in Illinois.  The Court
concluded: "[T]he weight of authority and California's interest
in managing its own judicial system counsel us not to import the
doctrine of cross-jurisdictional tolling into California law."

---

[9] Cross-jurisdictional tolling, when combined with the borrowing
statute, does not ask whether the suit would be timely if both
Vincent I and Vincent II were filed in California or Texas.  The
borrowing statute only asks about tolling for the second suit.
Therefore, the issue is whether a California court that
considered the claims in Vincent II, if filed in California,
would decide that those claims were tolled by the pendency of
the Vincent I suit in federal court in New York.

36

Id.  Subsequently, in Hatfield v. Halifax PLC, 564 F.3d 1177,
1187 (9th Cir. 2009), the Court of Appeals declined to apply
California American Pipe tolling on the basis of a previously
filed class action in New Jersey state court.  The court
concluded: "California has not adopted such American Pipe
tolling where the class action was filed in a foreign
jurisdiction."  Id.  The Court explained the rationale for
rejecting such cross-jurisdictional tolling: "[u]nless all
states simultaneously adopt the rule of cross-jurisdictional
class action tolling, any state which independently does so will
invite into its courts a disproportionate share of suits which
the federal courts have refused to certify as class actions
after the statute of limitations has run."  Id. (internal
quotation marks and citation omitted).  In short, California
does not recognize cross-jurisdictional American Pipe tolling
and there is no basis to do so here.  See Centaur, 2011 WL
7939090, at *5.

The plaintiffs also argue that even if California American
Pipe tolling does not apply, the statutes of limitations for
their claims should be tolled under California's equitable
tolling doctrine.  See, e.g., Hatfield, 564 F.3d at 1187-88.
However, because the plaintiffs seek to bring their second
action in the same court, rather than a different court,

37

California's equitable tolling doctrine does not apply.  See
Centaur, 2011 WL 7939090, at *6.

"Equitable tolling under California law is a judicially
created doctrine that operates to suspend or extend a statute of
limitations in order to ensure that a limitations period is not
used to bar a claim unfairly."  Hatfield, 564 F.3d at 1185
(citation omitted).  Although the Ninth Circuit Court of Appeals
has applied equitable tolling in cross-jurisdictional cases
where the initial class action was filed in a different
jurisdiction from the case in which tolling was sought, see id.
at 1189, equitable tolling does not apply when the plaintiffs
seek to file a subsequent action in the same court as the prior
action, see Centaur, 2011 WL 7939090, at *6; see also Naylor v.
Flavan, No. Civ. 08 03746 GAF, 2009 WL 1468708, at *6 (C.D. Cal.
May 19, 2009) ("plaintiff is not entitled to equitable tolling
under California law because [the prior class action] and this
case were both filed in this court, that is, in the same
forum."); Barrier v. Benninger, No. C 98 0650 CAL, 1998 WL
846599, at *9 (N.D. Cal. Dec.1, 1998) (explaining that to apply
equitable tolling where a plaintiff attempts to bring a
subsequent action in the same forum, "would effectively allow
plaintiff to prosecute his argument against these defendants in
perpetuity.").  In this case, the plaintiffs have filed this

action in the same court as Vincent I.  Under clear California precedent, equitable tolling is unavailable.

The statutes of limitations for Gutierrez's claims are not tolled under California American Pipe tolling, equitable tolling, the California saving statute, or any other laws of California.  Therefore, under the borrowing statute, section 202, all claims against Gutierrez are dismissed because the statutes of limitations have expired.

### ii.

The plaintiffs argue that Vincent's claims are tolled under Texas law, either because of Texas American Pipe cross-jurisdictional tolling or equitable tolling.  Both arguments are without merit.[10]

Texas state courts recognize Texas American Pipe tolling for class actions initially brought within the Texas state court system, as to all plaintiffs in the first suit, "named and unnamed."  See Brinston v. Koppers Indus., 538 F. Supp. 2d 969, 980 (W.D. Tex. 2008).  However, Texas courts have not ruled on

---

[10] The Texas saving statute, Tex. Civ. Prac. & Rem. Code Ann. § 16.064(a), is inapplicable because it only applies to cases when the second action is subsequently filed in a different court from the first action.  See Clary Corp. v. Smith, 949 S.W.2d 452, 460 (Tex. App. 1997) ("the legislature intended the saving statute to apply only to cases refiled in a different court after dismissal, not in the same court.").

whether the same rule applies cross-jurisdictionally, to toll claims when a prior suit has been brought in another jurisdiction outside of Texas state courts. In Vaught, the Court of Appeals for the Fifth Circuit noted that "it is unclear whether . . . a federal class action filed in Texas or in another State would ever toll a Texas statute of limitations, regardless of the type of claims raised." See Vaught v. Showa Denko K.K., 107 F.3d 1137, 1147 (5th Cir. 1997). However, it was only necessary for the Court to conclude, as it did, that a previously filed federal class action in Maryland did not toll the statute of limitations for Texas state law personal injury claims from a mass tort. Id. at 1144-47 (citing Bell v. Showa Denko K.K., 899 S.W.2d 749 (Tex. App. 1995)); see also Newby v. Enron Corp. ("In re Enron"), 465 F. Supp. 2d 687, 719-20 (S.D. Tex. 2006) (relying on Vaught and concluding that a previously filed federal class action raising federal securities law claims did not toll the statute of limitations for state law claims asserted in a subsequent action in federal court in Texas).

The cases on which the plaintiffs rely do not establish that Texas would recognize cross-jurisdictional tolling. Several of the cases the plaintiffs rely on did not concern cross-jurisdictional tolling at all. See Ventura v. Benales, 905 S.W.2d 423, 424-25 (Tex. App. 1995) (discussing an action filed in Texas state court); Bara v. Major Funding Corp.

Liquidating Trust, 876 S.W.2d 469, 471 (Tex. App. 1994); Grant
v. Austin Bridge Constr. Co., 725 S.W.2d 366, 368 (Tex. App.
1987) (discussing the effect of tolling from a class action
previously filed in Texas state court). In Brinston, the
District Court did indicate that a previously filed class action
in federal court served to toll the statute of limitations for
class members for Texas state law claims that were reasserted in
a subsequent action in the same federal court. 538 F. Supp. 2d
at 980. However, the Court ultimately dismissed the plaintiffs'
claims for lack of standing because of the voluntary dismissal
of the first action. The Court's analysis of tolling was thus
dicta. In any event, it is insufficient to overcome the
guidance of the Court of Appeals for the Fifth Circuit in Vaught
that it is at least unclear whether Texas courts would ever
recognize cross-jurisdictional tolling of a Texas state statute
of limitations based on a class action filed in federal court.
Given the reluctance to read such a rule into Texas
jurisprudence, see In re Fosamax, 694 F. Supp. at 258, the
plaintiffs have failed to satisfy their burden to show that
Texas would toll the state statutes of limitations based on the
Vincent I class action filed in federal court.

The plaintiffs' attempt to apply Texas equitable tolling
law is equally unavailing. Texas law allows for equitable
tolling in certain circumstances:

> where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass. Courts have also applied equitable tolling when the plaintiff sues the wrong defendant, does not name the proper defendant until after limitations expires, and a "special relationship" exists between defendants, such that the added defendant was aware of the facts, not misled, and not disadvantaged in preparing a defense.

Bilinsco Inc. v. Harris Cnty Appraisal Dist., 321 S.W.3d 648,

654 (Tex. App. 2010) (internal quotation marks and citations

omitted). These considerations are inapplicable to this case.

There was neither trickery nor a defective pleading.

Furthermore, an extension of Texas equitable tolling law by this

Court to allow for cross-jurisdictional tolling would be a

circumvention of the Texas saving statute and the cases

interpreting Texas law that declined to apply cross-

jurisdictional tolling. The plaintiffs' claims are not tolled

under the doctrine of equitable tolling.

In summary, all of the claims of the New York resident

plaintiffs, the Garridos, against Wells Fargo and Moss Codilis

are tolled under the New York statute of limitations and may

proceed. All of the claims of the nonresident plaintiffs,

Gutierrez and Vincent, are barred because it is undisputed that

the statutes of limitations have expired and the claims are not

saved by the respective tolling laws of their resident states.

The plaintiffs' additional argument regarding equitable tolling under federal common law is without merit.  The argument relies on federal courts using federal common law to toll federal statutes equitably.  See Iavorski v. INS, 232 F.3d 124, 129 (2d Cir. 2000) (equitably tolling claim under federal statute); Polanco v. DEA,   158 F.3d 647, 655 (2d Cir. 1998) (same); Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (same).  In contrast to the cases cited by the plaintiffs, this is a diversity case, and a federal court sitting in diversity applies the forum state's statute of limitations, Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 109-10 (1945), and conflict of law provisions,  Ijemba v. Litchman, 127 F. App'x 5, 7 (2d Cir. 2005).  As explained above, under section 202, the statutes of limitations for the New York residents' claims have been tolled under section 205(a).  For the nonresident plaintiffs, the tolling provisions of their respective jurisdictions apply, because they are shorter than those under the law of New York.  The equitable tolling decisions of federal courts on matters of federal law are not relevant.

**B.**

Barclays and Ocwen[11] have moved for summary judgment
dismissing the plaintiffs' claims on the grounds that the
statute of limitations has run for all claims against them.[12]  In
contrast to Wells Fargo, which admits that it is a successor-in-
interest by merger to the Money Store defendants, both Barclays
and Ocwen deny that they are successors-in-interest.  Barclays
and Ocwen argue, persuasively, that because they were never
added as parties to Vincent I, the statute of limitations cannot
be tolled as to the claims against them based on the pendency of
Vincent I.  The statute of limitations on all claims expired
unless the statutes were tolled, but they could not have been
tolled against Barclays and Ocwen based on Vincent I because
Barclays and Ocwen were never parties in Vincent I.  The
plaintiffs argue, based on Rule 25(c) of the Federal Rules of
Civil Procedure, that because Barclays purchased HomeEQ, one of

---

[11] Ocwen joined Barclays' Motions for Summary Judgment.  (Second
Notice of Joinder, Vincent v. Money Store, No. 11 Civ. 7685
(S.D.N.Y. Apr. 5, 2012), ECF No. 52.)  Ocwen is included in this
portion of the opinion because its status is identical to
Barclays: Ocwen was not a party to Vincent I and denies the
plaintiffs' allegation that it is a successor-in-interest to The
Money Store defendants.
[12] As explained above, the only possible claims that could be
asserted against Barclays and Ocwen are the claims of the New
York resident plaintiffs.

the Money Store defendants in Vincent I, during the pendency of Vincent I, the suit against Barclays may proceed.[13]

Rule 25(c) of the Federal Rules of Civil Procedures provides that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party . . . ." Fed. R. Civ. P. 25(c). "Federal Rule of Civil Procedure 25(c) permits the substitution of a party in an action where there has been a transfer of interest." See Jaffe v. Capital One Bank, No. 09 Civ. 4106, 2010 WL 691639, at *2 (S.D.N.Y. Mar. 1, 2010). Neither Barclays nor Ocwen was ever added as a party in Vincent I. Contrary to the plaintiffs' argument, nothing in the language of Rule 25(c) or cases interpreting the Rule authorizes the use of Rule 25(c) to add a party retroactively to a previous action for purposes of pretending that it was a defendant in that action and that the action was in fact pending against it.

All of the cases on which the plaintiffs rely involve the attempted substitution of a party under Rule 25(c) into an ongoing action, not retroactively adding a party to a previous lawsuit for purposes of tolling. See, e.g., Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1407 (11th Cir. 1998); Blachy v. Butcher, 190 F.R.D. 428, 432 (W.D. Mich. 1999). Had

---

[13] The plaintiffs never address Ocwen in their opposition papers.

the plaintiffs moved to substitute Barclays and/or Ocwen into Vincent I and demonstrated that Barclays and/or Ocwen was indeed a successor-in-interest to The Money Store defendants' liabilities, Rule 25(c) may have been used. See Blachy, 190 F.R.D at 432; cf. Andrews, 140 F.3d at 1407. However, this is not Vincent I, but a wholly separate litigation.

Furthermore, although there are conflicting allegations over whether Ocwen or Barclays is actually a successor-in-interest to The Money Store defendants, that does not preclude summary judgment in favor of both alleged defendants because, even if Ocwen and/or Barclays are successors-in-interest to The Money Store defendants, that does not make them parties to Vincent I, in which they were never parties. If Ocwen and/or Barclays became successors-in-interest to The Money Store defendants while Vincent I was pending, the plaintiffs could have moved to substitute them as parties or to join them. But the plaintiffs never made such a motion. Alternatively, the plaintiffs could have awaited a decision in Vincent I and, if there were a judgment against The Money Store defendants, attempted to enforce it against Ocwen and/or Barclays. See Bar-Ayal v. Time Warner Cable Inc., No. 03 Civ. 9905, 2006 WL 2990032, at *1 (S.D.N.Y. Oct. 16, 2006) ("Rule 25(c) . . . does not require that anything be done after an interest has been transferred. The action may be continued by or against the

original party, and the judgment will be binding on his
successor in interest even though he is not named.") (quoting 7C
Wright, Miller, & Kane, Fed. Prac. and Proc. § 1958 (2d ed.
1986)) (internal quotation marks omitted).  The plaintiffs
cannot use Rule 25(c) to pretend that Ocwen and/or Barclays were
parties in Vincent I when they were never joined in that action.
The claims against Ocwen and Barclays by all plaintiffs are
dismissed.

                              CONCLUSION

        The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
foregoing reasons, Wells Fargo's Motion for Summary Judgment is
**denied** as to the Garridos and **granted** as to Gutierrez and
Vincent.  Moss Codilis' Motion for Summary Judgment is **denied** as
to the Garridos and **granted** as to Gutierrez and Vincent.
Barclays' Motion for Summary Judgment is **granted** as to all
plaintiffs.  Ocwen's Motion for Summary Judgment is **granted** as
to all plaintiffs.  **The Clerk is directed to close docket nos.
8, 36, 45, and 50.**

SO ORDERED.

Dated:    New York, New York
          January 4, 2012
                                        John G. Koeltl
                                  United States District Judge

                                 47