UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

LORI JO VINCENT, ET AL.,

                    Plaintiffs,          11 Cv. 7685 (JGK)

         - v.-                           OPINION AND ORDER

THE MONEY STORE, ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiffs Linda and John Garrido bring this purported
class action on behalf of themselves and all others similarly
situated against the defendants, The Money Store, TMS Mortgage,
Inc., HomEq Servicing Corp. (collectively, the "Money Store
defendants"), and Moss, Codilis, Stawiarski, Morris, Schneider &
Prior, LLP ("Moss Codilis").  The plaintiffs allege a common law
fraud claim against the Money Store defendants in connection
with the Money Store defendants' allegedly improper debt
collection practices, and a claim against Moss Codilis under
Col. L. §12-5-115, a Colorado state statute prohibiting the
unauthorized practice of law.  The plaintiffs move for
certification of a class based on each claim pursuant to Rule 23
of the Federal Rules of Civil Procedure.

**I.**

     The factual background of this case has been set forth in
the Court's previous decision on summary judgment, Vincent v.

1

Money Store ("Vincent II"), 915 F. Supp. 2d 553, 557-59
(S.D.N.Y. 2013), and is substantially similar to the facts set
out in the Opinion and Order resolving the class certification
motion in Vincent I, which this Court is issuing on the same day
as this Opinion and Order.  Familiarity with those decisions is
assumed.  The following factual and procedural background
relevant to the present motion is undisputed, unless otherwise
noted.

**A.**

The named plaintiffs in this action, Linda and John
Garrido,[1] took out home mortgage loans on which they later
defaulted.  The Money Store defendants serviced the loans.  In
the event of default, the loan documents that the plaintiffs
signed provided that the lender had a right to be paid back for
costs and expenses, including attorneys' fees, provided they
were reasonable and not prohibited by applicable law.  See
Grobman Decl. Ex. A.  Throughout their loan-servicing practice,
the Money Store defendants worked with several outside vendors
and law firms to assist them with debt collection, foreclosures,
and bankruptcies.  The defendants used multiple electronic
databases to record and review the payment of bills from law

---

[1] The other named plaintiffs who also originally brought this action, Lori Jo
Vincent and Ruth Ann Gutierrez, were previously dismissed from this action
because their claims were time-barred.  See Vincent II, 915 F. Supp. 2d at
574.

firms.  See Dunnery Decl. ¶ 3.  During discovery in Vincent I,
the Money Store defendants produced invoices from a database,
the New Invoice System, showing records of fees charged to the
plaintiffs.  Each invoice contains information about a
particular borrower, including the attorneys' fees the borrower
was charged, the event for which the services were required
(such as a foreclosure or bankruptcy), and various other fields
relating to the billing of those fees.  See Grobman Decl. Ex. J
(Garrido invoices).  The invoices include fields that track
various milestones for processing the attorneys' fees, including
"Submitted," "Reviewed," "Accepted," "Approved," "Check
Requested," and "Check Confirmed."  See id.  Relying on
deposition testimony from the defendants' 30(b)(6) witness, John
Dunnery, the plaintiffs allege that the absence of a date under
"Check Confirmed" means that the defendants never paid the fees
to the attorneys.  See Dunnery Dep. 516-17.  The defendants,
through a Declaration by Dunnery, deny that a blank space under
"Check Confirmed" proves a failure to pay fees.  See Dunnery
Decl. ¶ 3.

     The Money Store defendants also hired the law firm Moss
Codilis to prepare and send default notices, or breach letters,
to borrowers that were in default.[2]  The plaintiffs allege that

---

[2] The Money Store defendants' and Moss Codilis's relationship is described in
more detail in the accompanying class certification decision in Vincent I.

this "Breach Letter Program" was overseen by Moss Codilis attorney Christina Nash, who was not licensed to practice law in Colorado, where Moss Codilis was located.  See Am. Compl. ¶ 27; Nash Dep. 19-20.  The plaintiffs and Moss Codilis dispute the type of work that Ms. Nash performed while supervising the Breach Letter Program.  The plaintiffs argue that Nash had to make many legal determinations, such as whether a debt was owed and whether a letter could be sent.  See Nash Dep. 208-09.  Moss Codilis emphasizes the many non-legal tasks that Nash performed, such as pulling out loans with incomplete addresses, assessing whether the amount in default met a threshold number for attempting recovery, and ensuring the boilerplate language of the letters was correct.  See Nash Dep. 39-41, 208-09.

**B.**

The plaintiffs filed this action on October 28, 2011, as the third action in a series of related actions against the Money Store defendants, dating back to Mazzei v. Money Store, filed in June 2001.  The second action, Vincent v. Money Store ("Vincent I"), was filed in April 2003 against the Money Store defendants.  In Vincent I, the plaintiffs brought claims under the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and various state law claims.  See Vincent I Am. Compl, No. 03cv2873, ECF No. 126.  On September 29, 2011, this Court granted summary judgment dismissing the plaintiffs'

4

TILA claim, denied a motion to reconsider the prior dismissal of the FDCPA claim, and declined to exercise supplemental jurisdiction over the remaining state law claims.  See <u>Vincent v. Money Store</u>, No. 03cv2876, 2011 WL 4501325, at *9 (S.D.N.Y. Sept. 29, 2011).[3]  Shortly thereafter, the plaintiffs initiated this action, bringing the state law claims that had been dismissed in <u>Vincent I</u> and alleging diversity jurisdiction under the Class Action Fairness Act.  See Am. Compl. ¶ 1.

The plaintiffs' claims relevant to this motion include a fraud claim against the Money Store defendants for allegedly charging borrowers for attorneys' fees that were never paid to attorneys, and a claim against Moss Codilis under Col. L. §12-5-115, a Colorado state statute forbidding the unauthorized practice of law based on Ms. Nash's supervision of the Breach Letter Program.[4]  On January 4, 2013, this Court granted partial summary judgment for the defendants dismissing the claims of two of the named plaintiffs as time-barred.  See <u>Vincent II</u>, 915 F. Supp. 2d at 574.  The Court held that claims of the Garridos, who are New York residents, were tolled pursuant to the New York saving statute, N.Y. C.P.L.R. § 205(a).  <u>Id.</u> at 567.  However,

---

[3] On appeal, the Court of Appeals reversed this Court's decision in part and reinstated the plaintiffs' FDCPA claim.  See <u>Vincent v. The Money Store</u>, 736 F.3d 88, 109 (2d Cir. 2013).
[4] Although the plaintiffs allege several other claims in the Complaint, such as breach of contract, they are basing their class certification motion only on the fraud claim and the Colorado state law claim.

for the non-resident plaintiffs, Ms. Gutierrez and Ms. Vincent,
New York's borrowing statute, N.Y. C.P.L.R. § 202, required
looking to the tolling laws of their home states, California and
Texas, respectively.  Id.  This Court held that under both
California and Texas law, the plaintiffs' claims were time-
barred.  Id. 569-72.  Consequently, the Gutierrez and Vincent
claims were dismissed.[5]

The remaining plaintiffs, the Garridos, now move to certify
a class based on the fraud claim against the Money Store
defendants and a class based on the Colorado state law claim
against Moss Codilis.  The plaintiffs filed their present motion
for certification on June 6, 2014.

## II.

Before certifying a class, the Court must determine that
the party seeking certification has satisfied the four
prerequisites of Rule 23(a): (1) numerosity, (2) commonality,
(3) typicality, and (4) adequacy of representation.  See Fed. R.
Civ. P. 23(a); Teamsters Local 445 Freight Div. Pension Fund v.
Bombardier, Inc., 546 F.3d 196, 202-03 (2d Cir. 2008); In re
Initial Pub. Offerings Sec. Litig. ("In re IPO"), 471 F.3d 24,

---

[5] The plaintiffs had also originally brought claims against the alleged
successors-in-interest of the Money Store defendants, namely Barclays Capital
Real Estate, Inc. and Ocwen Loan Servicing, LLC.  In its January 4 decision,
this Court also dismissed the claims against those defendants because they
were not parties in Vincent I, and the claims against those parties were
therefore time-barred.  See id. at 573.

32 (2d Cir. 2006).  The Court must also find that the party seeking certification has satisfied the requirements of one of the subdivisions of Rule 23(b).

The plaintiffs here seek certification under Rule 23(b)(3). A class action may be maintained under Rule 23(b)(3) where "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Court has set out the requirements for Rule 23(a) and Rule 23(b)(3) in the accompanying Opinion and Order in Vincent I and adopts that explanation here.

### III.

The plaintiffs propose certifying two classes in this case: (1) all borrowers on loans owned or serviced by the Money Store defendants who were charged attorneys' fees and expenses that the Money Store defendants did not pay to attorneys from January 2001 to the present, as reflected by the absence of a date in the "Check Confirmed" field of the New Invoice database; and (2) all borrowers on loans owned or serviced by the Money Store defendants who were charged attorneys' fees for the Moss Codilis breach letter program from April 1997 through October 1999.  The first class is based on a common law fraud claim and is asserted only against the Money Store defendants.  See Hr'g Tr. 4-5, Nov.

7

24, 2014.  The second class is based on the Colorado
unauthorized practice of law claim and is asserted only against
Moss Codilis.  <u>See</u> Hr'g Tr. 5, 10.

Before turning to the Rule 23 analysis for each class,
there are threshold issues regarding the scope of the class
definition.  After the Court's January 4, 2013, summary judgment
decision dismissing the claims of Gutierrez and Vincent as time-
barred under California and Texas law, respectively, only the
claims of the New York plaintiffs, the Garridos, remain.  The
Court based that decision on the New York tolling and borrowing
statutes, and California and Texas tolling law.  <u>See</u> <u>Vincent II</u>,
915 F. Supp. 2d at 562-67.  Therefore, the import of that
decision is that the claims of all Texas and California class
members would be time-barred in this action.

Undeterred, the plaintiffs seek to certify two nationwide
classes, or, in the alternative, New York and California
subclasses.  However, the Court may only consider a class of New
York residents.  Because the Court has already held that claims
by Texas and California residents would be untimely, they cannot
be included in the class definition.  <u>See</u> <u>Jermyn v. Best Buy</u>
<u>Stores, L.P.</u>, 256 F.R.D. 418, 430 (S.D.N.Y. 2009) (considering
statutes of limitations to alter the scope of the class).  If
the Court were to certify a nationwide class, excluding
California and Texas, the defendants would inevitably raise

8

statute-of-limitation defenses as to all class members outside
of New York.  The plaintiffs have offered "no reliable means of
collectively determining how many class members' claims are
time-barred." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 234
(2d Cir. 2008) (vacating district court's certification of class
due to the plaintiff's failure to satisfy the predominance
requirement), abrogated on other grounds by, Bridge v. Phx. Bond
& Indem. Co., 553 U.S. 639 (2008).  The ensuing analysis of the
tolling laws of more than forty-five states would lead to an
abundance of individualized issues that would overwhelm any
common issues in this case.  See In re Rezulin Products Liab.
Litig., 210 F.R.D. 61, 67 (S.D.N.Y. 2002) (considering statute
of limitation issues within Rule 23(b) analysis).  Therefore,
this Court will only consider a class of New York borrowers for
each claim.

                              **IV.**

     The plaintiffs' first proposed class is based on their
fraud claim against the Money Store defendants.  The plaintiffs
claim that the putative class members all paid legal fees
charged by the Money Store defendants that the defendants had
not yet paid to attorneys.  The plaintiffs argue that the
proposed class was defrauded into paying these fees.  The
plaintiffs claim that the factual scenario common to each class
member is the absence of a date in the "Check Confirmed" field

                                9

of the New Invoice database for each borrower, which the plaintiffs argue demonstrates that the defendants did not pay those fees to the attorneys.

The plaintiffs' claim is essentially the same as the claim described as the "Phantom Fees" claim in Mazzei for which class certification was denied.  In Mazzei, the plaintiff alleged that the Money Store defendants charged attorneys' fees to borrowers that were never paid to attorneys.  Mazzei v. Money Store, 288 F.R.D. 45, 60 (S.D.N.Y. 2012).  Rather than alleging the fraud claim at issue in this case, the claim in Mazzei was styled as one for breach of contract.  This Court denied class certification of that claim for several reasons, including, among others, failures of typicality and commonality.  Id. at 60-62.  Mazzei's invoices had the word "Unavailable" under the "Check Confirmed" field compared to several of the other putative class members who had blank spaces, thus rendering Mazzei an atypical class representative.  Id. at 61-62. Furthermore, the plaintiff could not put forth common proof for the entire class because the plaintiff was not alleging that the defendants had a policy of charging borrowers in this way, but rather could only point to a small sample of invoices.  Id.

The plaintiffs' revamped claim in this action attempts to account for the deficiencies in Mazzei's claim.  The plaintiffs here are attempting to certify a class of only those with blank

spaces under the "Check Confirmed" field, and they claim that there is evidence that the Money Store defendants have a policy of charging borrowers in this way such that there would be a class wide question of whether this practice constitutes fraud. Nevertheless, the plaintiffs' new version of the "Phantom Fees" claim remains unamenable to class wide resolution.

The plaintiffs have failed to satisfy commonality under Rule 23(a)(2) and predominance under Rule 23(b).  In Mazzei, this Court noted that even if the plaintiff purported to represent a class of borrowers whose invoices all had the same designation—for example, the word "Unavailable" under "Check Confirmed"—there would still be a commonality problem due to the failure to allege a "common policy" by the defendants.  Id. at 61 n.17.  "Without a common policy, there would remain the possibility for each purported class member, the fees were paid but the 'Unavailable' designation was the result of a clerical error."  Id.

Here, the plaintiffs claim that the Money Store defendants have a policy of billing borrowers for attorneys' fees not yet paid to attorneys.  They point to documents describing the defendants' "Payoff Quote Procedures," which suggest that when the defendants are compiling a borrower's cost balance, the defendants would estimate attorneys' fees to the borrower if the attorneys did not provide them within an established timeframe.

11

See, e.g., Grobman Decl. Ex. R, at 2612.  However, as the
defendants' 30(b) witness explained, and the Payoff Quote
Procedures show, the payoff quotes are the defendants' attempts
to respond to requests for the borrower's total balance of
costs, including fees.  See Dunnery Dep. 517-18; Grobman Decl.
Ex. R, at 2604.  Therefore, the Payoff Quote Procedures do not
necessarily alter the defendants' claimed policy of *not* charging
borrowers for attorneys' fees that were not paid.  See Dunnery
Dep. 517-18.  Unlike in Vincent I, in which the plaintiffs'
claim concerns the established practice of the Breach Letter
Program, the plaintiffs here have only alleged that a policy
exists.  Because any factfinder would have to determine not only
whether there was a policy but also whether in each case a
borrower was charged fees that were not paid, individualized
determinations will predominate over any common questions.  See
Wahl v. Midland Credit Mgmt., Inc., 243 F.R.D. 291, 300-01 (N.D.
Ill. 2007) (holding that plaintiffs' proposed class did not
satisfy the predominance requirement because the plaintiffs were
"attack[ing] Defendants' *alleged* policy", and so determining the
existence of this [policy] in each individual case . . . would
predominate over the common question" of whether the alleged
policy was unlawful) (emphasis in original).

The only common tie between the putative class members is
the absence of a date beneath "Check Confirmed" in the

12

defendants' billing records.  The defendants deny that such an absence means that the attorneys' fees were not paid, and the plaintiffs have not proven by a preponderance of the evidence that the blank spaces equate to a common policy or practice of the defendants to charge attorneys' fees that were not paid. The plaintiffs offer little explanation of how they may prove the elements of a fraud claim on a class wide basis with blank spaces as their only generalized proof.  See Osberg v. Foot Locker, Inc., No. 07cv1358, 2014 WL 5800501, at *2 (S.D.N.Y. Nov. 7, 2014) ("Whether the required elements of a claim may be demonstrated through generalized proof is the sine qua non of predominance.").

Moreover, the plaintiffs have not satisfied their burden as to commonality or predominance under Rule 23(b) due to their failure to support their fraud claim with any representation by the Money Store defendants.  Under New York law, to state a claim for fraud, "the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury."  Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999).  As an element of the claim, "[the] Plaintiff must show [that the] reliance was reasonable."  Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 665 N.Y.S.2d 415, 417 (App. Div. 1997) (citation omitted); see also Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151, 165 (S.D.N.Y. 2014).  The plaintiffs

rely on the invoices from the New Invoice System and payoff quotes as evidence of the Money Store defendants' representation to borrowers that they were required to pay fees, but neither the invoices nor the payoff quotes were routinely sent to the borrowers.  The invoices in the New Invoice Sytem were sent to the Money Store defendants and not to borrowers.  The payoff quotes were only prepared and sent to the borrower when specifically requested by that borrower.  See Grobman Decl. Ex. R, at 2604.  The plaintiffs have failed to show the alleged representations that were sent to borrowers, much less that they were knowingly false and that the individual members of the class relied on them.

The plaintiffs argue that the Court may presume misrepresentations were made because the borrowers in the putative class paid the alleged phantom attorneys' fees; therefore, the Money Store defendants must have represented that they were due.  However, as the Second Circuit Court of Appeals has explained, "liability for fraudulent misrepresentations cannot be established simply by proof of a central, coordinated scheme.  Rather . . . each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002) (affirming denial of class

14

certification of fraud claims for lack of predominance).  In this case, any factfinder would have to consider what the defendants represented to each borrower, and, due to the lack of proof of a common policy, whether that representation was false because the attorneys' fees the defendants charged were not actually paid to attorneys.

The plaintiffs rely heavily on In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108 (2013), to argue that the borrowers' payment of the attorneys' fees may be used as generalized proof of misrepresentation, reliance, and materiality.  In In re U.S. Foodservice, the plaintiffs sought to certify a Racketeer Influenced and Corrupt Organization Act ("RICO") claim based on the defendant's allegedly fraudulent overbilling of its customers.  Id. at 112, 118.  The Court affirmed class certification, holding that the customers' payment of the inflated invoices "may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed."  Id. at 120.

However, in that case, the plaintiffs had presented invoices that were actually mailed to the defendant's customers, and all of those invoices included "the same fraudulent

misrepresentation." Id. at 118.  The Court was thus dealing

with "fraud claims based on uniform misrepresentations," which

it noted were "appropriate subjects for class certification."

Id. (citing Moore, 306 F.3d at 1253).  The plaintiffs have

presented no case that supports presuming that a representation

was made, in addition to presuming reliance.  Because evaluating

the fraud claim would require looking to what was sent to each

individual borrower, the plaintiffs have not shown predominance

by a preponderance of evidence to satisfy Rule 23(b).

Finally, the plaintiffs have failed to satisfy the adequacy

requirement under Rule 23(a)(4).  The named plaintiffs, the

Garridos, filed six bankruptcies in the span of four years and

had several dismissed as "bad faith filings."  See Vincent I

McDermott Decl. Exs. M, O, Q, R, S, T.  These filings would

create "serious concerns" as to the Garridos' credibility at any

trial, and the Garridos are therefore inadequate class

representatives.  Savino v. Computer Credit, Inc., 164 F.3d 81,

87 (2d Cir. 1998) (affirming denial of class certification due

to named plaintiff's inadequacy under Rule 23(a)(4)).

The plaintiffs argue that those bankruptcy filings do not

bear on the credibility of the named plaintiffs and the ability

of their counsel to litigate on behalf of the class in this

action.  This Court accepted a similar argument in the

accompanying class certification motion in Vincent I, where Ms.

16

Gutierrez's bankruptcy filings and bounced checks did not jeopardize her ability to prosecute an FDCPA claim on behalf of a class.  However, two key differences in this case require a different result.  First, unlike Ms. Gutierrez, the Garridos had multiple filings dismissed by a Bankruptcy Judge that explicitly found that they had filed the actions in bad faith.  Vincent I McDermott Decl. Exs. R, S.  The Money Store defendants incurred attorneys' fees in part while responding to these very bankruptcies.

Second, unlike an FDCPA claim, the plaintiffs' credibility would be especially important in the context of a fraud claim. See Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219-20 (S.D.N.Y. 2007) (stating that issues in fraud cases such as intent and reliance "typically turn on the parties' credibility as to their state of mind") (citations and quotation marks omitted), aff'd, 354 F. App'x 496 (2d Cir. 2009).  Because the Garridos' bankruptcies relate to the type of fees that they are challenging and "would create serious concerns as to [their] credibility at any trial," Savino, 164 F.3d at 87, they would not adequately protect the interests of the class and have failed to satisfy Rule 23(a)(4).

Because the plaintiffs have failed to meet all of the Rule 23(a) and 23(b) requirements for their fraud claim against the

Money Store defendants, the plaintiffs' motion to certify a class based on that claim is **denied.**

**V.**

The plaintiffs' second proposed class is based on their claim under Colorado state law against Moss Codilis for unauthorized practice of law.  The plaintiffs seek to certify a class of all borrowers that were charged attorneys' fees relating to the Moss Codilis Breach Letter Program from April 1997 to October 1999.  All members of the putative class received breach letters from Moss Codilis and paid attorneys' fees for Moss Codilis's work on the breach letters.  The plaintiffs claim that during their proposed class period, Ms. Nash was the lone supervisor of the Breach Letter Program, and that because she was unlicensed to practice law in Colorado, this constitutes unauthorized practice of law under Col. L. § 12-5-115.

The plaintiffs' motion as to this claim is another attempt to rehabilitate a claim for which this Court denied class certification in <u>Mazzei</u>.  In <u>Mazzei</u>, the plaintiff sought to certify a class of borrowers charged fees in connection with the Breach Letter Program based on Nash's allegedly improper involvement with the program.  288 F.R.D. at 57.  Unlike the plaintiffs here, Mazzei proposed a class period of March 1, 2000, to the present.  Because a licensed attorney began

18

supervising the program in 1999 and Mazzei was sent his first breach letter in 2000, Mazzei had not adduced sufficient evidence to show that his letter was sent under Nash's supervision and therefore had not satisfied "typicality, adequacy, or the implied requirement that he is a member of the class he seeks to represent." Id. at 58.  The Court also found that each member of the class would potentially be subject to the same defense—that Nash did not supervise the writing of his or her breach letter—and that the class therefore did not satisfy the commonality prong of Rule 23(a) or the predominance prong of Rule 23(b).  Id. at 58-59.

The plaintiffs attempt to respond to those deficiencies by limiting the class period in this case to April 1997 to October 1999, a time period in which they claim that Nash was the only supervisor of the breach letters.  Moss Codilis disputes this characterization, arguing that even in this time period, there were other Colorado attorneys that were involved with the Breach Letter Program.  But even assuming that the plaintiffs could prove that Nash had some input into each letter received by class members, they would still not be able to establish predominance under Rule 23(b) because individualized inquiries would abound as to the type of work that Nash performed for each letter.

Although the plaintiffs are silent on what must be proved to impose liability under Col. L. §12-5-115,[6] the statute at least requires that the unlicensed attorney "in fact provided legal services" in order for liability to be imposed.  Koscove v. Bolte, 30 P.3d 784, 788 (Colo. App. 2001).  Moss Codilis has presented evidence showing that much of Nash's work in the Breach Letter Program was ministerial and non-legal in nature.  See Nash Dep. 39-41, 208-09.  Indeed, the plaintiffs in Vincent I argued as much for purposes of their FDCPA claim.  They argue that Moss Codilis was a mere conduit for the Money Store defendants.  The plaintiffs in this case have not presented any evidence or explanation as to how a factfinder could determine on a class wide basis the legal or non-legal work that Nash did on each of the breach letters so that a factfinder could ultimately determine whether the work on each letter was legal or non-legal.  Rather, it appears that the factfinder would have to analyze Nash's work as to each borrower on each letter to determine whether or not she was providing legal services.  Therefore, the plaintiffs have not satisfied the predominance

---

[6] Because the plaintiffs fail to discuss the required elements of a claim under Col. L. §12-5-115, which has been repealed, they plainly have not shown by a preponderance of evidence how they could satisfy the elements of such a claim through generalized proof.

requirement of Rule 23(b) and their motion for class certification of this claim is **denied.**[7]

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the plaintiffs' motion for class certification is **denied.**  The Clerk is directed to **close Docket Nos. 121 and 138.**

SO ORDERED.

Dated:  February 2, 2015
        New York, New York                    _____/s/_____
                                                    **John G. Koeltl**
                                            **United States District Judge**

---

[7] Moss Codilis also argues that the plaintiffs have not shown that numerosity is satisfied under Rule 23(a)(1).  In reply, the plaintiffs submitted a Declaration from Professor Richard Holowczak purporting to calculate the total number of class members by relying on, among other things, a database that was not produced to Moss Codilis.  Moss Codilis has moved to strike that declaration.  Because the Court has denied the plaintiffs' motion for class certification on grounds other than numerosity, Moss Codilis's motion is **denied** as moot.

21
